IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JULIA WYGAL,

           Plaintiff,

v.                                 CIVIL ACTION NO.  5:09-cv-00322

LITTON LOAN SERVICING LP, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Julia Wygal's Motion to Remand and Motion for Costs, Expenses, and Attorney's Fees [Docket 6].  For the reasons set forth below, this motion is **DENIED**.

*I.  BACKGROUND*

This case arises from the allegedly unlawful actions of Defendant Litton Loan Servicing LP (Litton) to collect a debt from Plaintiff Julia Wygal.  According to the allegations in the complaint, Wygal's attorney sent a letter to an attorney representing Litton on June 6, 2008, to inform Litton that Wygal was represented by counsel with respect to her outstanding debt and that all future correspondence should be directed to Wygal's attorney.  Despite the written request, Litton continued to place telephone calls and send letters to Wygal directly.  Litton admits contacting Wygal at least eighteen times after June 6, 2008.

On March 5, 2009, Wygal filed a complaint in the Circuit Court of Raleigh County, West Virginia, alleging that Litton's actions violated unspecified provisions of the West Virginia Consumer Credit Protection Act (WVCCPA), W. Va. Code §§ 46A-1-101, *et seq.*

The complaint states a cause of action under the WVCCPA and asserts several claims under West Virginia common law. Also named in the complaint are Gregory A. Tucker PLLC (Tucker)[1] and a John Doe defendant who remains unidentified. The complaint alleges that Tucker is the Substitute Trustee of property that is security for the debt at issue and that he had been directed to foreclose on the property. Wygal now submits that this assertion was incorrect, however, and that Samuel I. White PC (White) is the entity charged with initiating foreclosure proceedings on the property. (Docket 7 at 1 n.1.) No motion has been made to substitute White for Tucker as a defendant in this action. The John Doe defendant is alleged to have acted in concert with Litton to cause Wygal's injuries.

Litton filed a timely notice of removal on March 30, 2009, seeking to invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441. According to the notice of removal, Litton is a limited partnership organized under the laws of Delaware with a principal place of business in Houston, Texas. Neither of its partners, both limited liability companies, have West Virginia citizenship. Wygal and Tucker are citizens of West Virginia, but Litton contends that Tucker is a fraudulently joined or nominal party and therefore should not be considered for jurisdictional purposes. Wygal disagrees, arguing that Tucker is a necessary party. Litton also avers that the amount in controversy is greater than the statutory threshold of $75,000 by aggregating the potential statutory penalties it faces for Wygal's claims under the WVCCPA. Wygal does not dispute this assertion, and the Court accepts that Litton has demonstrated by a preponderance of the evidence that the amount in controversy requirement has been met. *Cf. Countryman v. NCO Fin.*

---

[1] For simplicity, Tucker will be referred to throughout as an individual. It should be noted, however, that Gregory A. Tucker PLLC, the law firm, rather than Gregory A. Tucker, the attorney, is named as a party.

*Sys.*, 5:09-cv-00288, 2009 U.S. Dist. LEXIS 46019, at *5–8, 2009 WL 1506720, at *2 (S.D. W. Va. May 27, 2009) (Johnston, J.) (discussing calculation of amount in controversy for claims under the WVCCPA).

Wygal timely filed the pending motion to remand and motion for attorneys' fees pursuant to 28 U.S.C. § 1447(c) on April 20, 2009. Wygal maintains that because she and Tucker are both citizens of West Virginia, the parties are not diverse and this Court is without jurisdiction to entertain her complaint. Wygal further argues that Litton has not met its burden of showing that Tucker is a fraudulently joined party. In its response, Litton advances its argument that Tucker is a fraudulently joined or nominal party. This matter is now fully briefed and ripe for the Court's consideration.

## II.  DISCUSSION

The asserted basis of the Court's jurisdiction over this removed action is that there is complete diversity of citizenship among the parties and the amount in controversy exceeds the jurisdictional threshold. 28 U.S.C. § 1332(a). The amount in controversy requirement is not at issue, but the parties vigorously dispute whether complete diversity exists. The complete diversity requirement is satisfied "when no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). Both Wygal, the plaintiff, and Tucker, a named defendant, are citizens of West Virginia, which at first blush suggests that complete diversity does not exist. If Tucker is, as Litton argues, either a fraudulently joined or nominal party, then his citizenship is irrelevant to the jurisdictional analysis. *See Navarro Savings Assoc. v. Lee*, 446 U.S. 458, 460–61 (1980) (nominal party); *Hartley v. CSX Transp.*, 187 F.3d 422, 424 (4th Cir. 1999) (fraudulently joined party).

*A.    Fraudulent Joinder*

Fraudulent joinder requires neither fraud nor joinder. Rather, it is "a term of art [which] does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990); *cf. Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568 (5th Cir. 2004) (adopting term "improper joinder" as more accurate than "fraudulent joinder"). To show that a nondiverse defendant has been fraudulently joined, "the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Mayes*, 198 F.3d at 464. "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley*, 187 F.3d at 423. In fact, the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Mayes*, 198 F.3d at 464. Accordingly, "[a] claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 233 (4th Cir. 1993); *see also Hartley*, 187 F.3d at 426 ("Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.").

West Virginia law guides the Court in determining whether there is any possibility that Wygal would be able to establish a right to relief against Tucker in state court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *see also Hartley*, 187 F.3d at 425. Wygal asserts her claims under unspecified provisions of the WVCCPA and common law. The pertinent inquiry is whether these

causes of action and the facts alleged in support thereof comport with Wygal's asserted reason for naming Tucker as a party:

> Defendant Tucker is a necessary party to this action. As Substitute Trustee [with respect to the property at issue] it has been directed to foreclose upon the property and refuses to postpone or halt the foreclosure. As such, Defendant Tucker is sued solely in his [sic] capacity as Substitute Trustee, and plaintiff seeks no monetary recovery whatsoever against Tucker.

(Docket 1-2 ¶ 7.)

As the trustee holding the deed of trust to the property burdened by the debt at issue here, Tucker's role in the dispute between Wygal and Litton is clearly circumscribed by West Virginia law. The purpose of a deed of trust, much like a mortgage, is to secure a debt owed by the trust-debtor to the trust-creditor. W. Va. Code §§ 38-1-1a, -2. The trustee is a third party who holds the deed to the property in trust. A trustee is an agent of both the trust-creditor and the trust-debtor, and, as such, the trustee is obligated to act in an impartial manner with respect to both parties. *Lucas v. Fairbanks Capital Corp.*, 618 S.E.2d 488, 493 (W. Va. 2005) (citing Syl. pt. 7, *Hartman v. Evans*, 18 S.E. 810 (W. Va. 1893)).

The trustee has a statutory duty to sell the trust property at a public auction "whenever required by any creditor secured . . . by the deed" if the debtor defaults on payments to the creditor. W. Va. Code § 38-1-3. The statute does not afford the trustee discretion to disregard the trust-creditor's command, even if the trust-debtor raises objections to the foreclosure sale. *Lucas*, 618 S.E.2d at 498. It is not the province of the trustee to resolve disputes between the trust-debtor and trust-creditor. *Villers v. Wilson*, 304 S.E.2d 16, 19 (W. Va. 1983). When ordered to sell the

5

property, the trustee's only duty is to conduct the sale in accordance with the requirements set forth in the deed of trust and W. Va. Code §§ 38-1-3 to -8.[2]

It has long been held that the trust-debtor may file an action against the trustee to enjoin the foreclosure sale of the property. Although the Supreme Court of Appeals of West Virginia has often repeated this general principle, *see, e.g.*, *Fayette County Nat'l Bank v. Lilly*, 484 S.E.2d 232, 240 n. 19 (W. Va. 1997); *Villers*, 304 S.E.2d at 19–20, it has identified but a few theories, mostly by way of dicta, under which a trust-debtor can obtain an injunction of the sale. The sale can be enjoined if the validity or amount of the debt is in dispute, *Wood v. West Va. Mortgage & Disc. Corp.*, 127 S.E. 917, 919 (W. Va. 1925), if the loan secured by the deed of trust is usurious, *Kessel v. Cohen*, 140 S.E. 15, 17 (W. Va. 1927), if the public sale violates the law, *Dennison v. Jack*, 304 S.E.2d 300, 210 (W. Va. 1983), or if the debtor-trustee is suffering from some mental infirmity, *id*. The foreclosure sale cannot be enjoined, however, simply because the trust-debtor has a claim for unliquidated damages against the trust-creditor.[3] *Villers*, 304 S.E.2d at 20; *Shrader v. Gardner*, 74 S.E. 990, 990 (W. Va. 1912).

Litton concedes that it cannot prove that Tucker was named as a defendant in an act of outright fraud. Thus, the Court will look to see if Wygal would be able to establish a cause of action against Tucker. *See Mayes*, 198 F.3d at 464. Wygal's legal justification for seeking an injunction against Tucker is unclear from the complaint or briefing. Wygal makes only the plain assertion that

---

[2] Although not required to do so, the trustee *may* seek clarification from the courts if the propriety of the sale is in question. *Lucas*, 618 S.E.2d at 496–97.

[3] Additionally, a trustee's foreclosure sale may not be enjoined because poor economic conditions or inclement weather would depress the sale price of the property. *Lopinsky v. Preferred Realty Co.*, 163 S.E. 1, 1 (W. Va. 1932); *Caperton v. Landcraft*, 3 W. Va. 540, 540–41 (1869).

an injunction is necessary because Tucker was directed to foreclose on the property and that he refused to do so. (Docket 1-2 ¶ 7; Docket 7 at 4–5.) Tucker's obligation under West Virginia law is to sell the trust property when directed to by the trust-creditor or its representative. W. Va. Code § 38-1-3. He has no duty to consider the objections of Wygal, the trust-debtor, or to postpone the sale at her request. *Lucas*, 618 S.E.2d at 498. Furthermore, Wygal has neither alleged nor insinuated that Tucker has acted in a fraudulent or collusive manner with Litton, engaged in debt collection actions in violation of the WVCCPA and his duties as a trustee, or prepared to sell the property in a manner inconsistent with W. Va. Code §§ 38-1-3 to -8. Nothing in Wygal's complaint or briefing suggests that Tucker's actions as trustee give rise to a possible right to injunctive relief. If such a right to relief is possible, it must arise from the conduct of Litton.[4]

Litton is alleged to have contacted Wygal multiple times by telephone and through the mail after being made aware that Wygal was represented by an attorney with respect to the outstanding debt. Assuming these allegations state viable causes of action against Litton under the WVCCPA and common law, Wygal may have a valid unliquidated claim for damages against Litton. *See* W. Va. Code § 46A-5-101(1). Likewise, Wygal potentially has unliquidated claims for damages under the common law tort and negligence counts in the complaint. The existence of these claims, without more, does not entitle Wygal to an injunction of the foreclosure sale. *Villers*, 304 S.E.2d at 20; *Shrader*, 74 S.E. at 990.

---

[4] It is unclear whether Litton is the trust-creditor or a representative of the trust-creditor. However, this distinction is not important to the resolution of the pending motion. *Cf.* W. Va. Code § 38-1-3 (stating that a foreclosure sale can be initiated by a secured creditor or "the assignee or personal representative of any such creditor"); Syl. pt. 3, *Thomas v. Firestone Tire & Rubber Co.*, S.E.2d 905 (W. Va. 1980) (noting that "debt collectors" covered by WVCCPA include creditors and parties who attempt to collect debts on behalf of creditors).

If there were a possibility that Wygal's debt would be cancelled as a result of her claims, equity may demand that the impending foreclosure sale be enjoined to preserve the status quo. There are two provisions of the WVCCPA that could lead to this result. First, if the loan secured by the property at issue was issued by a party not licenced to make consumer loans, *see* W. Va. Code § 46A-4-101, then the loan would be void and Wygal would have no obligation to pay the debt, § 46A-5-101(2). There is no indication that this situation applies to the case at hand, as Wygal has not questioned the validity of the debt in any manner. Second, the WVCCPA permits the cancellation of debts owed to creditors who "wilfully" engage in prohibited debt collection practices. W. Va. Code § 46A-5-105. Cancellation of debt is not an available remedy in this case, however, because this remedy is not available for secured debts like the one at issue here. *See id.* ("[T]he court may cancel the debt when the debt is not secured by a security interest.).

It is worth observing that Tucker is only superficially related to Wygal's claims, which relate to wrongful actions allegedly taken by Litton in order to collect a debt. Cases concerning debt collection actions that violate the WVCCPA or which constitute common law torts do not depend on rights or duties arising from the underlying credit arrangement and may be maintained independently of any such arrangements. *Cf. Wilson v. Dell Fin. Servs., L.L.C.*, 5:09-cv-00483, 2009 U.S. Dist. LEXIS 60933, at *13, 2009 WL 2160775, at *5 (S.D. W. Va. July 16, 2009) (Johnston, J.). Here, because only Litton's actions are at issue, the underlying debt is only relevant to the extent that it exists.

Wygal presents neither a legal argument nor factual allegations that would give rise to a possible right to injunctive relief against Tucker under any theory recognized in West Virginia case law. Wygal does not allege that the validity or amount of the debt is in question, that the loan

underlying the debt was usurious, that the sale violates the law, or that Wygal suffers from a mental infirmity. Furthermore, although the West Virginia Supreme Court of Appeals has never provided an exhaustive list of situations warranting the injunction of a foreclosure sale, there is no "arguably reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Filla v. Norfolk & S. Ry.*, 336 F.3d 806, 811 (8th Cir. 2003). Accordingly, the Court **FINDS** that Litton has met its burden of demonstrating that a West Virginia state court would dismiss the claims against Tucker. *Cf. Hartley*, 187 F.3d at 435. Therefore, Tucker is a fraudulently joined party and his citizenship will not be considered for the purpose of evaluating this Court's jurisdiction. He will be dismissed from this case. *See Mayes*, 198 F.3d at 461.

Finding that Tucker was fraudulently joined obviates the need to fully address Litton's argument that Tucker is a nominal party, as a party generally cannot be both fraudulently joined and nominal. Fraudulent joinder entails that the party serves no role in the litigation, whereas a nominal party may be proper party to the litigation, albeit one without any real interest in the outcome. *Spencer v. Harris*, 394 F. Supp. 2d 840, 843 (S.D. W. Va. 2005) (Copenhaver, J.). A nominal party typically has the role of a mere "depository or stakeholder." *Allen v. Monsanto Co.*, 396 F. Supp. 2d 728, 733–34 (S.D. W. Va. 2005) (Chambers, J.) (quoting *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349*, 427 F.2d 325, 327 (5th Cir. 1970)); *see also Knapp v. R.R. Co.*, 87 U.S. 117, 124 (1873) (remarking that a nominal party is "a mere passive instrument in the litigation."); *Yount v. Shashek*, 472 F. Supp. 2d 1055, 1061 (S.D. Ill. 2006) (noting that even a necessary party "may nevertheless be a nominal party"). Because there is no plausible cause of action is stated against Tucker, he is not a nominal party. The Court notes, however, that even if Wygal could claim a right to injunctive relief against Tucker under some novel theory of West

Virginia law, Tucker's role in this litigation would be merely that of a third-party holder of the disputed deed without any interest in the resolution of Wygal's claims. Tucker would therefore be a nominal party and his citizenship would not be a factor in the diversity analysis.

      B.      *Removal Jurisdiction*

United States "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Generally, the party seeking removal bears the burden of showing that federal jurisdiction exists. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Because removal jurisdiction is strictly construed, all doubt is resolved in favor of remand. *Id.*

The propriety of the Court's jurisdiction over a removed action is evaluated with respect to record as it existed at the time of removal. *Wickline v. Dutch Run-Mays Draft, LLC*, 606 F. Supp. 2d 633, 635 (S. D. W. Va. 2009) (Johnston, J.). In this case, the record as of the date the notice of removal was filed reflects that Wygal is the sole plaintiff and that Litton, Tucker, and John Doe are named as defendants. It is inconsequential to the jurisdictional analysis that Wygal has expressed that White, rather than Tucker, should have been named as the trustee defendant. Moreover, the citizenship of White would be no more material than the citizenship of Tucker if he had been named as a party prior to removal. For similar reasons, it is immaterial that subsequent to the removal Litton may have instructed the trustee to cancel the foreclosure sale.

As a fraudulently joined party, Tucker's citizenship has no bearing on this Court's jurisdiction. The citizenship of the unidentified John Doe defendant, who has not been served, also will not affect diversity. *Lawson v. Am. Gen. Assur. Co.*, 455 F. Supp. 2d 526, 528 n.2 (S.D. W. Va. 2006) (Johnston, J.). The only real parties in interest in this matter are Wygal, who is a citizen of West Virginia, and Litton, which is not. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990) (holding that the citizenship of a limited partnership is the citizenship of each of its general and limited partners). Thus, there is complete diversity among the opposing parties. As stated previously, the amount in controversy requirement has been satisfied. Accordingly, the Court **FINDS** that it may exercise jurisdiction over this removed action pursuant to 28 U.S.C. §§ 1332(a), 1441(a).

### III. CONCLUSION

For the reasons set forth above, Plaintiff Julia Wygal's Motion to Remand and Motion for Costs, Expenses, and Attorney's Fees [Docket 6] is **DENIED**. Gregory A. Tucker PLLC is hereby **DISMISSED** as a party to this action.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 18, 2009

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE